KING AND PETRACCA, LLP
Matthew R. Petracca, Esq.
Attorney Id. No. 017412007
51 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
(973)998-6860
(973)998-6863 (facsimile)
Attorneys for Plaintiffs

**FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PLAINTIFFS UNDER SEAL | CIVIL ACTION |
| | CASE NO. |
| v. | **FILED IN CAMERA AND UNDER SEAL** |
| DEFENDANTS UNDER SEAL | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

### UNDER 31 U.S.C. §3729 ET SEQ.

### N.J.S.A. 2A:32C-1 ET SEQ.

### AND OTHER CLAIMS

KING AND PETRACCA, LLP
Matthew R. Petracca, Esq.
Attorney Id. No. 017412007
51 Gibraltar Drive, Suite 2F
Morris Plains, New Jersey 07950
(973)998-6860
(973)998-6863 (facsimile)
Attorneys for Plaintiff, United States of America ex rel. Jesse Wolosky, and on behalf of the
State of New Jersey

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF NEW JERSEY *ex rel.* JESSE WOLOSKY,<br><br>Plaintiffs - Relators,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC; WELLS FARGO BANK, N.A.; BAYVIEW ASSET MANAGEMENT; DEUTSCHE BANK; PROFESSIONAL APPEARANCES, INC.; BIDS-FOR-BARRISTERS, INC.; MILLENNIUM 21 REALTY, LLC; DESTINATION HOME REALTY, LLC; ROBERT DONAHUE; AND ALL OTHER DEFENDANTS AS DETAILED IN EXHIBIT A, DEFENDANTS JOHN DOES 1-2,000 in their individual and official capacities; DEFENDANTS XYZ CORPORATIONS 1-2,000; fictitious names used to designate unknown parties,<br><br>Defendants. | CIVIL ACTION<br><br>CASE NO.<br><br>**COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS UNDER 31 U.S.C. § 3729 ET SEQ., NEW JERSEY FALSE CLAIMS ACT, AND OTHER CLAIMS**<br><br>**FILED BY HAND, IN CAMERA AND UNDER SEAL**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT FOR FALSE CLAIMS ACT VIOLATIONS

### UNDER 31 U.S.C. §3729 ET SEQ.

### AND

### N.J.S.A. 2A:32C-1 ET SEQ.

This is an action brought on behalf of the United States of America and the State of New Jersey by Jesse Wolosky (also referred to herein as "Relator"), by and through their attorneys, King and Petracca, LLP, Matthew R. Petracca, Esq., against the Defendants captioned above and herein listed in **Exhibit A** (also collectively referred to herein as "Foreclosing Lender Defendants," "Foreclosure Lender Defendants," or "Defendants"), pursuant to the *qui tam* provisions of the Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq*. ("FCA") and the relevant State of New Jersey state law *qui tam* statute N.J.S.A. 2A:32C-1 *et seq*. ("NJFCA"), Sherman Act, 15 U.S.C.A. § 1 et seq., Clayton Act 15 U.S.C.A. §12 et seq. and the Robinson Pitman Act 15 U.S.C.A. §13 et seq.

**I. INTRODUCTION**

1. This is an action to recover damages and civil penalties by Relator Jesse Wolosky on behalf of the United States and the State of New Jersey, arising from the false statements and claims that the Defendants knowingly presented to, or caused to be presented to, or failed to present to, the United States and to the State of New Jersey, in violation of the FCA, the NJFCA, the Sherman Act, the Clayton Act and the Robinson-Patman Act.

2. The Foreclosing Lender Defendants include but are not limited to, banks, mortgage institutions, servicing companies,

loan companies, lenders, trust companies, credit unions, private companies and their representatives, who knowingly presented and/or have made, or caused to be presented or made, the false claims and statements at issue, in order to make artificially inflated claims to the United States of America on Federal Housing Administration ("FHA") and Veterans Affairs ("VA") federally insured loans and mortgages.  These Defendants engaged in various conduct outlined herein, colluding with and in agreement with their representatives prior to and during Sheriff foreclosure sale auctions to discourage bidding and engaging in anti-competitive behavior at public auctions.  The Defendants reap their rewards on the back end of the catastrophe they put the United States in by "gaming the system" and using tactics of manipulation and Bid-Rigging to enrich their corporate bottom line.

3. The Foreclosing Lender Defendants also engaged in conduct to conceal, avoid and/or decrease the payment of the Realty Transfer Fee owed to the State of New Jersey, and to avoid the payment of commissions to the County Sheriff conducting foreclosure sale auctions.

4. Beginning at least as early as 2010, and likely much earlier, the Defendants knowingly submitted, or caused to be submitted to the Federal and State government, numerous false claims for payment arising from the Defendants' fraudulent

4

conduct including the conduct outlined herein at Sheriff foreclosure sale auctions conducted in the State of New Jersey, and continuing thereafter.

5. The Defendants engaged in conduct at local Sheriffs foreclosure sale auctions within each county, except for three out of the twenty-one counties, in the State of New Jersey by intentionally discouraging and suppressing bidding on the properties being foreclosed upon, manipulating the foreclosure auction, and conspiring prior to and during the auction, to ensure that the Foreclosing Lender Defendants purchased the property for the lowest possible figure, which is generally the starting bid of one-hundred-dollars ($100.00) instead of allowing the properties to be sold at Sheriff foreclosure sale auction for the highest and best price.[1] *The Defendants' conduct was an anti-competitive scheme to intentionally suppress bidding at Sheriff foreclosure sale auctions, to increase certain claims to the Federal Government, increase losses for Federal and State tax purposes, and to decrease fees and taxes owed to the State of New Jersey, Sheriffs Offices, Counties and other entities throughout the State of New Jersey.* The Defendants' conduct also injured third party bidders at auctions, in addition to property home-owners and second lien-holders on each property at Sheriff foreclosure sale auctions.

---

[1] Relator, Jesse Wolosky, has discovered through research and investigation that there exists four County Sheriff Offices within the State of New Jersey where the initial start bid is a minimum of $1,000.00.

6. The Defendants used a widespread scheme to obtain the properties at the lowest price at the Sheriff foreclosure sale auction, using several tactics to conspire and manipulate the sale auctions as further detailed herein, to make a greater claim to the Federal Government on FHA and VA guaranteed loans. The Defendants also charged "expenses" that in some cases were never incurred, or it is believed that they charged expenses at a higher amount than incurred, to increase their "loss" reported to the Federal Government to obtain a higher claim for payment from the United States of America on these Federally guaranteed loans.  These expenses were generally artificially inflated by the Defendants in what is generally referred to as the "Grand Total of Decree," and are believed to include but are not limited to expenses such as attorneys' fees, interest, title searches, insurance, maintenance, and other costs not actually incurred by the Foreclosing Lender Defendants.  For example, OCWEN LOAN SERVICING, LLC certified in their "Taxed Costs Sheet for Docket No. F-55803-09" dated September 23, 2015 that attorneys' totaled fees were two-hundred-fifty-dollars ($250.00) according to statute, but actually submitted charges to the court for attorneys' fees in the amount of $4,315.03.

7. The Defendants also used a widespread scheme to obtain the properties at the lowest price at the Sheriff foreclosure sale auction, using several tactics to conspire and manipulate

the auctions as further detailed herein, to conceal, avoid and/or decrease the payment of the Realty Transfer Fee owed to the State of New Jersey on each purchase of the foreclosed property at each foreclosure sale auction, while also avoiding the proper payment of commissions to the County Sheriff conducting the Sheriff foreclosure sale auction.

8. Beginning in at least 2010, and likely much earlier, the Defendants engaged in these widespread schemes to defraud the United States of America and the State of New Jersey in order to receive Federal funds they were not otherwise entitled to receive on the Federally Insured properties the Defendants were foreclosing upon, while also concealing, avoiding and/or decreasing the payment of the Realty Transfer Fee lawfully owed to the State of New Jersey and the County Clerk offices, and commissions to the County Sheriff offices.

9. The Defendants made false statements and concealed material information from the Federal and State agencies in order to ensure that it would receive a higher amount on its claims under the FHA and VA programs, and to conceal, avoid and/or decrease the amounts lawfully due and owing to the State of New Jersey and County Clerk offices under the Realty Transfer Fee, in addition to commissions owed to the County Sheriff offices.

10. The Defendants reported and certified these false statements made to the United States of America, to the State of New Jersey, and to the County Clerks offices of each county collecting the Realty Transfer Fees on behalf of the State of New Jersey, as true and correct.

11. As detailed herein, the Foreclosing Lender Defendants have received hundreds of millions of Federal and State dollars that they are not entitled to as a result of their engaging in fraudulent conduct, false representations, false certifications, and by concealing, avoiding and/or decreasing amounts lawfully due and owing to the United States of America and to the State of New Jersey.   The Defendants would not have received these moneys but for their manipulation, collision and fraudulent misconduct, and are liable to the Plaintiffs for damages resulting therefrom.

## II.    JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over claims brought on behalf of the United States under the False Claims Act, 31 U.S.C.A. §3729 *et seq.*, pursuant to the provisions of §3730 and §3732.    The Court has original jurisdiction of the State of New Jersey False Claims Act claims pursuant to 31 U.S.C.A. § 3732(b) because this action is brought under State law for the recovery of funds paid by the *qui tam* provisions under the New Jersey False Claims Act, and arises

from the same transaction or occurrence brought on behalf of the United States under 31 U.S.C.A. § 3730. This Court also has jurisdiction under the Sherman Act, 15 U.S.C.A. § 1 et seq., Clayton Act 15 U.S.C.A. §12 et seq. and the Robinson Pitman Act 15 U.S.C.A. §13 et seq.

13.    This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C.A. § 3731(a) because they transact business and are found within the District of New Jersey, and the acts outlined within 31 U.S.C.A. § 3729 occurred within the District of New Jersey.

14.    Venue is proper in the District of New Jersey under 31 U.S.C.A. § 3732(a) and under 28 U.S.C.A. § 1391(b), while the acts alleged herein occurred within the District of New Jersey.

15.    The Defendants' actions alleged herein occurred within the relevant statute of limitation periods and are therefore timely brought.

### III. PARTIES

#### A. Plaintiffs/Relator

16.    Relator, Jesse Wolosky, is an original source of the allegations made herein. The allegations made herein are not based upon information that has been publically disclosed. The Relator has provided the Governments of the United States and the State of New Jersey with a copy of the herein Complaint

9

and written disclosure with material information in accordance with 31 U.S.C.A. § 3730(b)(2).

17.     Relator, Jesse Wolosky, is a citizen of the United States and a resident of Sussex County, New Jersey. Mr. Wolosky for over a decade has been an investor of New Jersey tax lien certificates at municipal tax sale auctions conducted in New Jersey having attended hundreds of auctions, he is also an investor in real estate, and is experienced in Sheriff foreclosure sale auctions as well. Mr. Wolosky is also experienced in performing title searches, is knowledgeable in the operations of financial and commodities markets and has knowledge of institutional lending and procedures relating to real estate. Mr. Wolosky has also previously been a whistleblower having cooperated with the Federal Government (Federal Bureau of Investigation "FBI" and Department of Justice "DOJ" Anti-Trust Division) in uncovering complex criminal schemes occurring for over a decade in municipalities throughout the State of New Jersey, related to collusion and Bid-Rigging at public auctions.

18.     Relator, Jesse Wolosky, is an "original source" of the non-public information alleged in this Complaint within the meaning of 31 U.S.C.A. § 3730(e)(4)(A) and (B).

B. **Defendants**

19.     The Foreclosing Lender Defendants include but are not limited to, banks, mortgage institutions, servicing companies, loan companies, lenders, trust companies, credit unions, private companies and their representatives, who are listed above and are detailed on **Exhibit A** attached hereto. Each of these Defendants foreclosed upon homeowners and properties within the 21 counties of the State of New Jersey, since 2010, which occurred at a Sheriff foreclosure sale auction at a New Jersey Sheriff's office, where the acts outlined herein are alleged to have occurred by each Defendant. Defendants were engaged in, and/or were authorized to engage in, business within the State of New Jersey. The properties foreclosed upon at Sheriff foreclosure sale auctions within the State of New Jersey, were properties that were located within the geographical boundaries of the State of New Jersey, and the auctions concerned mortgages that were filed within the State of New Jersey, against properties located within the geographical boundaries of the State of New Jersey.

20.     John Does 1-2,000 Defendants and Defendants XYZ Corporations 1-2,000 are individuals, corporations, limited liability companies, partnerships, trusts, or other lawful business entities through which Defendants do business, who are unknown to the Plaintiffs at this time, but who engaged in the same or similar unlawful conduct as the Defendants named herein.

IV.  **THE DEFENDANTS' VIOLATION OF THE FALSE CLAIMS ACT UNDER 31 U.S.C.A. §3729 ET SEQ. THROUGH SUBMITTING FALSE CLAIMS TO THE FEDERAL GOVERNMENT THROUGH THE FEDERAL HOUSING ADMINISTRATION (FHA) AND VETERAN'S AFFAIRS (VA) BEFORE, DURING AND AFTER FORECLOSURES OF FHA AND VA INSURED MORTGAGES.**

21.    Defendants have engaged in a fraudulent scheme to inflate their expenses and damages before, during and after a foreclosure action, when such expenses are not actually incurred by the Defendants, while the Defendants manipulate the process to increase their claims against the Federal Government at a later date.  The Defendants then make insurance claims to the FHA and VA to obtain payment on these fraudulent claims made. The Defendants develop "costs" throughout years of foreclosure litigation, intentionally and purposefully dragging out the foreclosure litigation process, to then seek reimbursement of various "costs" that are believed to never have been incurred by the Defendants.

22.    The Defendants tally these "costs" and falsely certify to the Court the total of same, obtaining a "Grand Total of Decree" (also referred to as an "approximate judgment amount" prior to the Sheriff foreclosure sale auction) that is advertised and noticed to the public prior to any Sheriff

foreclosure sale auction for the property that will be auctioned off.

23.    The "Grand Total of Decree" is generally in excess of the assessed value or market value of the property, as it includes as many costs and expenses as possible such that the Defendants can later claim and seek reimbursement from the Federal Government for various excessive costs that were not actually incurred.

24.    Eventually, the foreclosure will be brought to a Sheriff foreclosure sale auction, where the Defendants will generally purposefully delay, prolong and adjourn the sale for as long as possible, intentionally incurring additional inflated costs and interest for which they will later seek reimbursement from the Federal Government.

25.    The Defendants then engage in their anti-competitive scheme to obtain the subject property for the lowest possible price of the starting bid of one-hundred-dollars ($100.00) by announcing **a so-called "upset price."**[2]  The **"upset price"** is a dollar amount that the Foreclosure Lender Defendants announce at the Sheriff foreclosure sale auctions that is below the "Grand Total of Decree." The "Grand Total of Decree" is the

---

[2] It is known to the Relator, Jesse Wolosky, through research and investigation that three of the twenty-one Sheriff County Offices in the State of New Jersey do not allow the Foreclosure Lender Defendants to announce an **"upset price"** prior to bidding on a subject property at the Sheriff foreclosure sale auction.  However, it is known to the Relator, Jesse Wolosky, that individuals who are interested in purchasing a subject property at a Sheriff foreclosure sale auction can simply telephone the Defendants' representatives one to two days before the auction date to obtain the **"upset price"**.

figure that represents the writ of execution from the court where the foreclosure is venued, and is also the figure advertised as the "approximate judgment amount" by the Sheriff in public notices prior to the sale of the property at the Sheriff foreclosure sale auction. **The "upset price" represents a figure that the Foreclosing Lender Defendants are willing to "bid up to" on a subject property.** The announcement of the **"upset price"** is immediately followed by an announcement by the Foreclosure Lender Defendants that their bid will start at one-hundred-dollars ($100.00). When the property is listed for sale at a Sheriff foreclosure sale auction, the artificially inflated "Grand Total of Decree" figure will be announced by the individual employed by the Sheriff's Office who conducts the Sheriff foreclosure sale auction and then the Defendants will make various announcements related to the subject property and then announce the **"upset price"**. The **"upset price"** is a figure generally in excess of what a third-party bidder from the public would be willing to bid and ultimately purchase the property for and is generally below the "Grand Total of Decree." The "Grand Total of Decree," prior to the Sheriff foreclosure sale auction taking place, is advertised by the Sheriff office and announced by the Sheriff representative just prior to bidding. Before the Sheriff representative takes bids on a subject property, the representative inquires whether there "are any announcements."

14

The Foreclosure Lender Defendants then make multiple announcements concerning outstanding liens or open amounts due to others including municipal entities, then announce the **"upset price"** at the Sheriff foreclosure sale auction before bidding on the subject property is initiated. By announcing the **"upset price"**, the Foreclosing Lender Defendants and their representatives are intentionally conducting themselves at the auctions in a behavior of Bid-Rigging and discouraging, manipulating, repressing, stifling, restraining and suppressing competitive bidding from members of the public at the Sheriff foreclosure sale auction. The Foreclosing Lender Defendants and their representatives manipulate the Sheriff foreclosure sale auction and conspire with the other Defendants attending the Sheriff foreclosure sale auction to prevent fair and equitable bidding on the properties from occurring.

26. In the State of New Jersey, Sheriff foreclosure sale auctions are held to obtain the highest and best price for the subject property, requiring the sale to be conducted in a fair and equitable manner. However, the Defendants undermine the fair and equitable process of the Sheriff foreclosure sale auctions by announcing an **"upset price"** generally well in excess of what a third-party bidder from the public would be willing to purchase the property for. The Foreclosure Lender Defendants, directly following the announcement of the **"upset price"**, start

15

the bid for that subject property at the nominal price of one-hundred-dollars ($100.00).  Generally, as a result of announcing the **"upset price"** prior to bidding, the Foreclosure Lender Defendants will have no competitive bidding from the general public attending the Sheriff foreclosure sale auction against the subject property.  As a result, the Foreclosure Lender Defendants will acquire the subject property for the nominal amount of one-hundred-dollars ($100.00).

27.    The Defendants engage in this conduct for several reasons, one of which is to claim the highest amount in damages as possible against the FHA and VA insured properties.  The Defendants obtain the subject properties for the starting bid of one-hundred-dollars ($100.00).  When the Defendants file a claim with the Federal Government under the FHA and VA programs they report an inflated "deficiency" amount using the Foreclosure-Report of Sale.  *The nominal one-hundred-dollar ($100.00) figure obtained at the sale auction to purchase the property is listed as the figure that the property sold for, only reducing the "deficiency" by one-hundred-dollars ($100.00) and not reducing the "deficiency" by its current grand total decree, approximate judgment amount, assessed value, market value, or the "upset price" announced.*  Following the sale auction, where the Lender Defendants were successful in purchasing the property for one-hundred-dollars ($100.00), they then pay the Sheriff in full

16

prior to obtaining the deed.  Once the deed is received from the Sheriff, in many cases the Defendants then wait to record the Sheriff's deed with the County Clerk well after the auction, knowing that the Defendants will be further reimbursed by the federal government for their additional interim "losses," while also intentionally failing to record the deed to stall the time limitations in which they are required to file their ultimate FHA and VA claims.  Many of the Foreclosing Lender Defendants even assign their Sheriff deed to other Foreclosing Lender Defendants.  During this time the Defendants are continuing to artificially inflate their expenses, including the performing of "maintenance" on the properties which it is believed is generally not actually performed, while receiving a windfall at the conclusion of the matter from the Federal Government when the Defendants file their FHA and VA claims.

28.    On June 29, 2016 at 2:00 p.m. Relator, Jesse Wolosky, attended the Sheriff foreclosure sale auction in the County Seat of Newton, Sussex County, New Jersey related to the foreclosure matter entitled GMAC/OCWEN LOAN SERVICING, LLC v. HEFFERNAN, Docket No. F-55803-09, Superior Court of New Jersey. **Exhibit B, Pleadings and documents related to Foreclosure Action GMAC/OCWEN LOAN SERVICING, LLC v. HEFFERNAN, Docket No. F-55803-09.**  Within minutes, given Relator Jesse Wolosky's knowledge and experience in past collusion matters involving public auctions,

this scheme was unveiled by the Relator, Jesse Wolosky, that Bid-Rigging, scheming, and collusion was taking place.    Relator Jesse Wolosky began attending the Sheriff foreclosure sale auctions to assist an individual through the foreclosure process while serving as a property manager for the individual's property.    The Relator, Jesse Wolosky, managed the property, which had a lease agreement with tenants residing at the property while the property was under foreclosure by Defendant OCWEN LOAN SERVICING, LLC.    The "Grand Total of Decree" announced by the Undersheriff on July 13, 2016 for the subject property was $435,544.29.    In an attempt to purchase the property at the Sheriff Foreclosure Sale Auction, Relator Jesse Wolosky bid on the subject property after the representative of OCWEN LOAN SERVICING, LLC announced the **"upset price"** in the amount of $249,000.00.    Since the Defendant, OCWEN LOAN SERVICING, LLC, announced the **"upset price"**, no additional third-party members of the public bid on the subject property and Relator Jesse Wolosky was the only bidder, bidding up to $95,000.00.    Defendant, OCWEN LOAN SERVICING, LLC, then bid $96,000.00 and purchased the property for that figure.    As a result the following commissions and fees were paid by OCWEN LOAN SERVICING, LLC:

Sheriff Commission Fees on $96,000.00 purchase:    $3,940.00

Realty Transfer Fees on $96,000.00 purchase:    $  384.00

**Total Fees        $4,324.00**

If Relator Jesse Wolosky was not present to bid on the property, it is clear that the announcement of the **"upset price"**, which was announced as being $249,000.00, would have discouraged bidding and would have resulted in the following commissions and fees:

Sheriff Commission Fees on $100.00 purchase: $    50.00

Realty Transfer Fees on $100.00 purchase:     $     2.00

**Total Fees     $    52.00**

Furthermore, the Relator obtained information from OCWEN LOAN SERVICING, LLC that it had "winterized" and it was "inspecting" the property on a monthly basis.  OCWEN LOAN SERVICING, LLC was charging costs for "winterizing" and "inspecting" the property, and ultimately increasing the "Grand Total of Decree," despite the property never being winterized or inspected.  With tenants continuing to reside in the property, and the Relator Jesse Wolosky was the property manager continually checking on the property, it was clear that it was never winterized or inspected as OCWEN LOAN SERVICING, LLC had no access to the home and tenants did not allow access to the home.  In further support, OCWEN LOAN SERVICING, LLC even certified in their "Taxed Costs Sheet for Docket No. F-55803-09" dated September 23, 2015 that attorneys' totaled fees were **two-hundred-fifty-dollars** ($250.00)

according to statute, but actually submitted charges to the court for attorneys' fees in the amount of $4,315.03.

29.    OCWEN LOAN SERVICING, LLC tallied various expenses against this property, with the costs and expenses never being proven or accounted for, aside from an untrue certification.

30.    Following the Sheriff foreclosure sale auction on July 13, 2016, the attorney for OCWEN LOAN SERVICING, LLC, prepared a letter on July 14, 2016 to the Sheriff **(Exhibit C, Letter to Sheriff dated July 14, 2016)** requesting that the Sheriff Deed be placed in the name of "U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust C/O CALIBER HOME LOANS, INC…", which under belief is an attempt to circumvent the decision of the Office of Mortgage Settlement Oversight in April 2016 ordering that OCWEN LOAN SERVICING, LLC freeze all foreclosures due to its failure to meet compliance requirements.[3] **(Exhibit D, Recorded Sheriff Deed, Page 4, Resulting from OCWEN LOAN SERVICING, LLC v. HEFFERNAN, Docket No. F-55803-09).**

31.    Furthermore, the Foreclosing Lender Defendants falsely certify on the "State of New Jersey Affidavit of Consideration for use by seller for sheriff deeds" that there are "No Prior Mortgages Or Liens Are Outstanding" despite there actually being Outstanding Prior Mortgages and Liens. **Id.** For

---

[3] https://www.jasmithmonitoring.com/omso/wp-content/uploads/sites/4/2016/04/Update-on-Ocwens-Consumer-Relief-and-Compliance-4.27.2016.pdf

example, OCWEN LOAN SERVICING, LLC, on the above referenced subject property, certified that there were "no prior mortgages or liens outstanding." **Id.** This was also a false representation and certification made as there were prior liens on the subject property.[4] **Id.**

32.    Following the Sheriff foreclosure sale auction OCWEN LOAN SERVICING, LLC, who then assigned the Deed to U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust C/O CALIBER HOME LOANS, INC, decided to induce the tenants in September 2016 to leave the subject property for a figure of $4,000.00 instead of honoring the existing lease at a rate of $2,000.00 per month in monthly rent income, which equates to a loss of $24,000.00 of annual income to CALIBER HOME LOANS, INC. The home located on the subject property was boarded up and remains vacant and abandoned to date.

33.    In further investigating, the Relator attended the foreclosure sale auction of the subject property involving the Foreclosing Lender Defendant OCWEN LOAN SERVICING, LLC in Sussex County, and other foreclosure sale auctions for other properties in Sussex County and multiple other counties, and found that the Foreclosure Lender Defendants were engaging in the conduct described above for various reasons, including

---

[4] See below, New Jersey False Claims Act claims herein, with Realty Transfer Fees owed to the State of New Jersey, where the Defendants intentionally do not disclose prior mortgages and outstanding liens to the State of New Jersey since the Defendants would be required to pay additional Realty Transfer Fees if such mortgages and outstanding liens were disclosed.

defrauding the Federal Government on FHA and VA loans. Relator, Jesse Wolosky, then sought and obtained information from all 21 counties within the State of New Jersey, attended auctions in various counties for over five months, and began uncovering the scheme that the Defendant lenders were engaging in, clearly defrauding the Federal Government and the State of New Jersey. The Defendant lenders actually engage representatives to manipulate the foreclosure sale auctions and engage in Bid-Rigging at the foreclosure sale auctions, and over the course of years have manipulated the foreclosure sale auction process to where the Defendants are undermining competitive bidding through their pre-auction announcements and Bid-Rigging practices. By manipulating the foreclosure sale auctions, and artificially increasing the "Grand Total of Decree," while it is believed the Defendants also deliberately delay the foreclosure process, the Foreclosure Lender Defendants are able to then reap hundreds of millions of dollars from the Federal Government's FHA and VA programs that the Foreclosure Lender Defendants are not entitled to receive. It is believed that when the FHA and/or VA programs reject the Foreclosing Lender Defendants' applications for reasons of delay and/or other failure for compliance with regulations, the Defendants conspire by assigning their interests to other Lender Defendants to reapply under the FHA and/or VA programs and submit claims anew.

22

Relator, Jesse Wolosky, was engaged in bidding on foreclosed properties during his attendance at the Sussex County Sheriff foreclosure sale auctions, bidding on properties to a figure that he was willing to purchase properties for, despite the lender Defendants announcing their **"upset price"** prior to the sale of each property at the Sheriff foreclosure sale auction. Relator Jesse Wolosky would generally be the only bidder bidding at the auction since the lender Defendants would discourage others in attendance from bidding by announcing their so-called **"upset price."** Attached hereto are examples of documents obtained from the June 29, 2016 and July 6, 2016 Sussex County Sheriff Foreclosure Sale Auctions, where Relator, Jesse Wolosky, did not bid on properties; these exhibits show the amount of the upset price being submitted to the Sherriff, announced at the auction, generally purchased for one-hundred-dollars ($100.00) by the Foreclosing Lender Defendants, the Sheriff then reports the sale in a "Foreclosure Report of Sale," an Affidavit of Consideration is prepared, and a billing statement is generated, which includes the Sheriff's commissions that are based on the sale price:

> **EXHIBIT K** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing Upset Price Information submitted from Foreclosing Lender Defendants' agents attending the auctions.

**EXHIBIT L** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing successful bidder conditions of sale, signed by purchasers or agents of purchasers.

**EXHIBIT M** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing The Grand Total Decree, Sheriff Fees and the amount of the winning bid.

**EXHIBIT N** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing the Foreclosure Report of Sale.

**EXHIBIT O** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing Affidavits of Consideration, for Realty Transfer Fees to be calculated.

**EXHIBIT P** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing Sheriff's Office of Sussex County Billing Statements, with commissions based on the amount of the competitive successful winning bid.

In attending these auctions, Relator Jesse Wolosky was able to make inquiries of the Undersheriff and Administrator operating the foreclosure sale auctions in Sussex County, discovering that the Foreclosure Lender Defendants are unlimited in the number of adjournments that they can request from the Sheriff's Office, that the Foreclosure Lender Defendants sometimes do not file their Sheriff's Deeds obtained after the deeds are received until a subsequent transfer of the property is about to occur, and that the Foreclosure Lender Defendants

generally purchase the property for their starting bid of one-hundred-dollars ($100.00) in Sussex County and other counties instead of the much higher **"upset price"** at the foreclosure sale auction that is announced by the Foreclosure Lender Defendants. When making inquiries, Relator Jesse Wolosky discovered that the Sheriff Offices were uncertain why the Foreclosure Lender Defendants were allowed to announce an **"upset price"** that is below the "Grand Total of Decree" aside from the announcement being something that was routine and regular practice. The Foreclosure Lender Defendants then avoid paying various fees to various governmental entities including but not limited to the State of New Jersey and to the 21 counties. For example, if the Grand Total of Decree equates to $462,187.00 and the representative announces an "**upset price**" of $181,000.00, if a member of the public attending the Sheriff Foreclosure Sale Auction thinks the subject property is only worth $150,000.00 and would want to bid and purchase that property for that amount, they will not bid against the representative because they were just informed that the representative will bid up to $181,000.00.[5] A member of the public will be discouraged from bidding as he or she was just advised that their bid would be a

---

[5] This is an actual example from June 29, 2016 from the Sussex County Sheriff foreclosure sale auction, Docket No. F-040799-14, Nationstar Mortgage, LLC v. Ondish, with Relator Jesse Wolosky attending the auction.

losing bid, and not engage in the bidding process to bid any amount against the representative at the public auction. This situation takes place at the Sheriff foreclosure sale auction a majority of the time and the bulk of the subject properties at the auction are purchased for one-hundred-dollars ($100.00) by the representatives of the Foreclosing Lender Defendants. By paying only one-hundred-dollars ($100.00) for a subject property the Foreclosing Lender Defendants pay the minimum amount of fifty-dollars ($50.00) towards the Sheriff commission and two-dollars ($2.00) in Realty Transfer fees on the purchase of one-hundred-dollars ($100.00) for a property. In the example above, when the representative does not announce the "upset price" at the Sheriff foreclosure sale auction, with a member of the public willing to competitively bid on the subject property up to $150,000.00, there would be a $7,700.00 commission to the Sheriff and the State of New Jersey would receive $760.00 in Realty Transfer Fees. **When the subject property is purchased for one-hundred-dollars ($100.00) by the Foreclosing Lender Defendants, the Foreclosing Lender Defendants do not pay Sheriff Commissions or Realty Transfer Fees based on the "upset price" even though it is announced publically and discourages competitive bidding.** Attached hereto are examples of documents obtained from the June 29, 2016 and July 6, 2016 Sussex County Sheriff Foreclosure Sale Auctions, where Relator, Jesse Wolosky,

26

did not bid on properties; these exhibits show the amount of the upset price being submitted to the Sherriff, announced at the auction, generally purchased for one-hundred-dollars ($100.00) by the Foreclosing Lender Defendants, the Sheriff then reports the sale in a "Foreclosure Report of Sale," an Affidavit of Consideration is prepared, and a billing statement is generated, which includes the Sheriff's commissions that are based on the sale price:

**EXHIBIT K** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing Upset Price Information submitted from Foreclosing Lender Defendants' agents attending the auctions.

**EXHIBIT L** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing successful bidder conditions of sale, signed by purchasers or agents of purchasers.

**EXHIBIT M** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing The Grand Total Decree, Sheriff Fees and the amount of the winning bid.

**EXHIBIT N** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing the Foreclosure Report of Sale.

**EXHIBIT O** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing Affidavits of Consideration, for Realty Transfer Fees to be calculated.

**EXHIBIT P** – Documentation from a non-competitive bidding auction where Relator Jesse Wolosky did not bid at the June 29, 2016 and July 6, 2016 Sheriff Foreclosure Sale Auction, containing Sheriff's Office of Sussex County Billing Statements, with commissions based on the amount of the competitive successful winning bid.

Relator Jesse Wolosky then investigated the conduct of Sheriff's auctions throughout the State of New Jersey and found the manipulative conduct by the Defendants to be rampant throughout almost every county, with *only* four privately owned companies generally representing the Foreclosure Lender Defendants as agents at each Sheriff foreclosure sale auction within the State of New Jersey, engaging in like conduct throughout the State. These companies are known as PROFESSIONAL APPEARANCES, INC.; BIDS-FOR-BARRISTERS, INC.; MILLENNIUM 21 REALTY, LLC; DESTINATION HOME REALTY, LLC, who are named as Defendants herein. These four privately owned companies, two of which are relatively small real estate companies, bid on over 98% of all foreclosures at Sheriff foreclosure sale auctions within the State of New Jersey. At times, the representatives of these companies even turn around and purchase the subject properties for themselves or a different third party purchaser, even though they were just representing the Foreclosure Lender Defendants. Additionally, the Foreclosure Lender Defendants are represented by approximately 15 law firms throughout the State of New Jersey who handle approximately 90% of all foreclosure

28

actions within the State of New Jersey. Furthermore, many of the Foreclosing Lender Defendants assign their debt notes multiple times to other lenders using the same law firms representing both the assignee and assignor in the same transaction. The Foreclosing Lender Defendants have these law firms represent them on both sides of the transaction of the assignments, despite this practice being an inherent conflict for the lender Defendants and the law firms.

34.    In reviewing the FHA handbook and documents related to the Defendants filing claims for Federally insured properties, it is clear that the Foreclosure Lender Defendants are colluding to engage in an industry-wide scheme to profit from the foreclosure process at the expense of the Federal Government, and ultimately, the taxpayers of the United States of America.[6]  The Defendants are liable to the United States of America for false claims made through the FHA and VA programs as outlined by the Third Circuit decision of U.S. v. Hibbs, 568 F.2d 347 (3rd Cir. 1977).

35.    The FHA and VA programs allow the lender Defendants to recoup costs on FHA and VA mortgages as outlined within the regulations pertaining to the FHA and VA programs.

---

[6] The below provides the guidelines to the bank in reporting and the procedures to be used in filling out the claims:
http://portal.hud.gov/hudportal/documents/huddoc?id=43304c2HSGH.pdf

http://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/hsgh/4330.4

The Defendants made claims to the Federal Government through the FHA and VA programs for the above, which included moneys/claims that were never incurred as losses by the Defendants and for moneys/claims that were artificially inflated as a result of the Defendants' own conduct at foreclosure sale auctions, and as a result of the Defendants' manipulation of the entire foreclosure process, to delay the foreclosures to increase costs/claims as a result of their time delays, and increase the claim amounts made to the Federal Government.

36.    Through the false claims and certifications of costs that were not actually incurred in the foreclosure process the Defendants are liable to the United States of America for damages arising under the False Claims Act.

37.    Under 31 U.S.C.A. §3729 (a)(1)(A) the Defendants are liable to the Federal Government for knowingly presenting, or causing to be presented, false and/or fraudulent claims to the Federal Government, while also conspiring to do so with their representatives and the other Foreclosure Lender Defendants named in this matter.    This occurred by the Defendants making claims through the FHA and VA with false artificially inflated expenses related to the foreclosure, which were never incurred by the Defendants.    The Defendants purposefully delay and extend the timeframe of the foreclosure process, while manipulating the Sheriff's foreclosure sale

auctions by announcing their so-called **"upset price"** to discourage bidding, to obtain the property for the nominal amount of only the starting bid of one-hundred-dollars ($100.00). The Defendants then make a claim to the Federal Government for the difference between the principal amount owed on the "Grand Total of Decree" minus the nominal one-hundred-dollars ($100.00) figure, which results in a purchase of the property and becomes a significant asset for the Foreclosure Lender Defendants at the Sheriff foreclosure sale auction.

38.    Under §3729 (a)(1)(B) the Defendants are liable to the Federal Government for knowingly making, using and/or causing to be made false records or statements material to the false and/or fraudulent claims, while also conspiring to do so with their representatives and the other Foreclosure Lender Defendants named in this matter. This occurred by the Defendants making claims through the FHA and VA with false artificially inflated expenses related to the foreclosure, which were never incurred by the Defendants. The Defendants purposefully delay and extend the timeframe of the foreclosure process, while manipulating the Sheriff's foreclosure sale auctions by announcing their so-called **"upset price"** to discourage bidding, to obtain the property for the nominal amount of only the starting bid of one-hundred-dollars ($100.00). The Defendants then make a claim to the Federal

31

Government for the difference between the principal amount owed on the "Grand Total of Decree" minus the nominal one-hundred-dollars ($100.00) figure, which results in a purchase of the property and becomes a significant asset for the Foreclosure Lender Defendants at the foreclosure sale auction.

39.    Under §3729 (a)(1)(E) the Defendants are liable to the Federal Government for making and/or delivering a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes and/or delivers the receipt without completely knowing that the information on the receipt is true, while also conspiring to do so with their representatives and the other lending Defendants named in this matter, by submitting certifications and receipts to the Federal Government, while also conspiring to do so with their representatives and the other lending Defendants named in this matter.    This occurred by the Defendants making claims through the FHA and VA with false artificially inflated expenses related to the foreclosure, which were never incurred by the Defendants.    The Defendants purposefully delay and extend the timeframe of the foreclosure process, while manipulating the Sheriff's foreclosure sale auctions by announcing their so-called **"upset price"** to discourage bidding, to obtain the property for the nominal amount of only the starting bid of one-hundred-dollars ($100.00).    The Defendants then make a claim to

the Federal Government for the difference between the principal amount owed on the "Grand Total of Decree" minus the nominal one-hundred-dollars ($100.00) figure, which results in a purchase of the property and becomes a significant asset for the Foreclosure Lender Defendants at the foreclosure sale auction.

40.    Under §3729 (a)(1)(G) the Defendants are liable to the Federal Government for knowingly making, using and/or causing to be made and/or used, while also conspiring to do so with their representatives and the other lending Defendants named in this matter, a false record and/or statement material to an obligation to pay or transmit money or property to the Federal Government, and/or knowingly concealing and/or knowingly or improperly avoiding or decreasing an obligation to pay or transmit money or property to the Federal Government by abandoning and causing properties to be vacated, boarding up properties, failing to maintain properties, overall decreasing the value of the abandoned properties and by manipulating the Sheriff's foreclosure sale auctions, announcing their so-called **"upset price"** to discourage bidding, to obtain the property for the nominal amount of only one-hundred-dollars ($100.00), to then make a claim to the Federal Government for the difference between the principal amount owed on the "Grand Total of Decree" and the nominal starting bid of one-hundred-dollars ($100.00). Rather than obtaining the highest and best bid from a

prospective third-party purchaser at the Sheriff foreclosure sale auction, under belief which would then be submitted to the Federal Government to reduce the Defendants' claims made under FHA and VA programs, the Defendants purposefully discourage bidding, which increases the claims made by the Foreclosure Lender Defendants to the Federal Government.

V.  **THE DEFENDANTS' VIOLATION OF THE NEW JERSEY FALSE CLAIMS ACT UNDER N.J.S.A. 2A:32C-1 ET SEQ. THROUGH MANIPULATING THE SHERIFF FORECLOSURE SALE AUCTION BIDDING PROCESS TO AVOID AND/OR DECREASE PAYMENT OF THE REALTY TRANSFER FEES TO THE STATE OF NEW JERSEY AND COUNTY CLERKS OFFICES, AND SHERIFF COMMISSIONS.**

41.  The facts alleged in the foregoing paragraphs are to be included under all claims concerning the State of New Jersey as though fully set forth herein.

42.  Relator, Jesse Wolosky, has uncovered an elaborate and widespread scheme employed by the Foreclosure Lender Defendants throughout the State of New Jersey that has been occurring for years, and most likely occurring in other States, where the Foreclosure Lender Defendants manipulate Sheriff's foreclosure sale auctions to avoid paying fees to the State and other governmental entities.

As outlined above, once a subject property is scheduled for the Sheriff foreclosure sale auction, the Foreclosure Lender

Defendants engage in an anti-competitive scheme to obtain the subject property for the lowest possible price at the starting bid of one-hundred-dollars ($100.00) by announcing **the so-called "upset price."**[7] The **"upset price"** is a dollar amount that the Foreclosure Lender Defendants announce at the Sheriff foreclosure sale auctions that is below the "Grand Total of Decree" figure, which is the figure that represents the writ of execution from the court where the foreclosure is venued and is also the figure advertised by the Sheriff in public notices prior to the sale of the property at the Sheriff foreclosure sale auction. The **"upset price"** represents a figure that the Foreclosing Lender Defendants are willing to bid up to on the subject property if any members of the public bid on that subject property, which is immediately followed by an announcement by the Foreclosure Lender Defendants that their bid will start at one-hundred-dollars ($100.00). When the property is listed for sale at a Sheriff foreclosure sale auction, the artificially inflated "Grand Total of Decree" will be announced by the individual employed by the Sheriff's Office who conducts the Sheriff foreclosure sale auction and then the Defendants will announce their **"upset price"**. The **"upset price"** is a value generally in excess of what a third-party bidder from the public

---

[7] Prior to the Sheriff foreclosure sale auction occurring, the representatives for the Defendants create and submit the "foreclosing sale bidding instructions" document to each Sheriff's Office, which contains the **"upset price"**; however, that document is never passed on to the Courts or to any State or Federal agency.

would be willing to bid and ultimately purchase the property for and is generally below the "Grand Total of Decree." The Foreclosure Lender Defendants announce the **"upset price"** at the Sheriff foreclosure sale auctions before bidding on the subject property is initiated. Depending on the county, such as in Morris County, the Foreclosure Lender Defendants also create a document with all the upset prices for all the properties listed the day of the auction and pass it around to members of the public prior to the Sheriff foreclosure sale auction being conducted. In Morris County, this conduct is engaged in by an individual named ROBERT DONAHUE, who is listed as a Defendant herein. The Foreclosure Lender Defendants also discuss with the same members of the public, prior to the Sheriff foreclosure sale auction beginning, their specific interests in specific subject properties and the amounts the members of the public may be willing to bid up to. Attached hereto as **Exhibit Q** are copies of sheets that ROBERT DONAHUE distributes to members of the bidding public prior to the auction in Morris County, further attempting to influence the bidding before the auctions begin.

By announcing the **"upset price"**, the Foreclosing Lender Defendants and their representatives are intentionally avoiding paying more expenses, including the appropriate commission to be paid to the Sheriff's Office and the appropriate Realty Transfer

36

Fee to the State of New Jersey. By announcing the **"upset price"** the Foreclosure Lender Defendants are discouraging competitive bidding through manipulation and Bid-Rigging, and as a result, they purchase the properties for their starting bid of one-hundred-dollars ($100.00) without competitive bidding occurring. The Foreclosure Lender Defendants, through their announcement of the **"upset price"** are Bid-Rigging and discouraging, repressing, manipulating, stifling, restraining and suppressing competitive bidding from members of the public in order to avoid or limit the payment of the Sheriff Commission Fees as purchaser of the property and Realty Transfer Fees associated with the transfer of ownership of the property. The conduct of the Foreclosure Lender Defendants at the Sheriff foreclosure sale auctions has caused the 21 County Sheriff Offices throughout the State of New Jersey and the State of New Jersey to lose hundreds of millions of dollars.

43.     In the State of New Jersey the Realty Transfer Fee (also referred to as the "RTF") is imposed in accordance with N.J.S.A. 46:15-5 et seq. upon the recording of deeds when transfers to real property occur. **EXHIBIT R, State of New Jersey, Division of Taxation, May 2007 publication with description of RTF and Frequently Asked Questions.** The Realty Transfer Fee is calculated based upon the consideration of the transaction, with transfers less than one-hundred-dollars

37

($100.00) being totally exempt from the fee under N.J.S.A. 46:15-10.

44.    The State of New Jersey publishes a Realty Transfer Fee Schedule, which is tiered based upon the consideration of the real property sale.  In addition to the consideration paid, if the amount of the consideration is in excess of one-million-dollars ($1,000,000.00), there is an additional 1% fee also known as the "mansion tax," and additional fees for commercial properties are also imposed.

45.    Instead of allowing competitive bidding to occur, the Foreclosure Lender Defendants employ their tactics to discourage any bidding on the properties, advising the public that they will bid up to the **"upset price"** figure if someone attempts to bid against them for the property.  Instead of paying the Realty Transfer Fees associated with the **"upset price"** that was announced by the Foreclosure Lender Defendants at the Sheriff foreclosure sale auctions, the Foreclosure Lender Defendants start the bid at one-hundred-dollars ($100.00), obtain the property for one-hundred-dollars ($100.00) by discouraging bidding by the public, and avoid paying the Realty Transfer Fee as the Realty Transfer Fee is exempt on one-hundred-dollar ($100.00) transactions, or only pay a minimum fee of two-dollars ($2.00) for that transaction.  The Foreclosure Lender Defendants also only pay a fifty-dollar ($50.00)

commission fee to the Sheriff's Office when they purchase the subject property at their initial starting bid of one-hundred-dollars ($100.00). If the **"upset price"** was not announced and did not exist, the public would engage in competitive bidding at the Sheriff foreclosure sale auctions and the County Sheriff Offices and Realty Transfer Fees would be based upon a figure obtained at the highest and best price obtained at a competitive auction. An example of competitive bidding and Realty Transfer Fees obtained as a result can be seen from the November 2, 2016 Sussex County Sherriff Foreclosure Sale Auction, where Jesse Wolosky engaged in competitive bidding. The attached exhibits, listed as follows, provides documentation of competitive bidding at a Sheriff Foreclosure Sale Auction:

>**EXHIBIT E** – Documentation from a competitive bidding auction as a result of Relator Jesse Wolosky bidding at the November 2, 2016 Sheriff Foreclosure Sale Auction, containing Upset Price Information submitted from Foreclosing Lender Defendants' agents attending the auctions.

>**EXHIBIT F** – Documentation from a competitive bidding auction as a result of Relator Jesse Wolosky bidding at the November 2, 2016 Sheriff Foreclosure Sale Auction, containing successful bidder conditions of sale, signed by purchasers or agents of purchasers.

>**EXHIBIT G** – Documentation from a competitive bidding auction as a result of Relator Jesse Wolosky bidding at the November 2, 2016 Sheriff Foreclosure Sale Auction, containing The Grand Total Decree, Sheriff Fees and the amount of the winning bid.

>**EXHIBIT H** – Documentation from a competitive bidding auction as a result of Relator Jesse Wolosky bidding

at the November 2, 2016 Sheriff Foreclosure Sale Auction, containing the Foreclosure Report of Sale.

**EXHIBIT I** – Documentation from a competitive bidding auction as a result of Relator Jesse Wolosky bidding at the November 2, 2016 Sheriff Foreclosure Sale Auction, containing Affidavits of Consideration, for Realty Transfer Fees to be calculated.

**EXHIBIT J** – Documentation from a competitive bidding auction as a result of Relator Jesse Wolosky bidding at the November 2, 2016 Sheriff Foreclosure Sale Auction, containing Sheriff's Office of Sussex County Billing Statements, with commissions based on the amount of the competitive successful winning bid.

Also, attached hereto as **Exhibit S** are the first pages of recorded deeds where competitive bidding took place, resulting appropriate Realty Transfer Fees based on an auction without collusion. **EXHIBIT S** – The first page of twenty-two Recorded Deeds from Sussex County Sheriff Foreclosure Sale Auction where competitive bidding took place on November 2, 2016, showing the amount of Realty Transfer Fees collected by the Sussex County Clerk's Office where Jesse Wolosky bid during the Sheriff Foreclosure Sale Auction

An example of RTF's obtained as a result of <u>non-competitive bidding</u> and Realty Transfer Fees obtained is attached hereto as **Exhibit T**, where Jesse Wolosky was not involved in bidding on properties and the Foreclosing Lender Defendants received the properties for the minimum one-hundred-dollars ($100.00) bid without competitive bidding occurring. **EXHIBIT T** – The first page of thirty-three Recorded Deeds from Sussex County Sheriff

40

Foreclosure Sale Auction where competitive bidding did not take place on June 29, 2016 and July 6, 2016, showing the amount of Realty Transfer Fees Collected by the Sussex County Clerk's Office where Jesse Wolosky did not bid during the Sheriff Foreclosure Sale Auction.

46.    To further avoid paying Realty Transfer Fees, the Defendants conspire by submitting false Affidavits to the State of New Jersey, falsely certifying on the "State of New Jersey Affidavit of Consideration for use by seller for sheriff deeds" that there are "No Prior Mortgages Or Liens Outstanding" despite there actually being Prior Mortgages and Outstanding Liens. When Prior Mortgages and Outstanding Liens exist on a subject property, the Defendants are required to check the appropriate box on the document to indicate there are Prior Mortgages and Outstanding Liens, list the Prior Mortgages and Outstanding Liens and name the secured party.  The Defendants are then required to calculate and pay the Realty Transfer Fee based upon the current amount due for each secured party and the amount of the purchase bid at the Sheriff foreclosure sale auction as set forth in the Sheriff's Deed.  The Defendants make the affidavit to induce the County Clerk or Register of Deeds to record the deed and accept the fee submitted with the Affidavit in accordance with the provisions of c. 49, P.L. 1968, as amended, and c. 225, P.L. 1979.  **EXHIBIT U - Example of Foreclosure**

Lender Defendants submitting a Deed and Affidavit of Consideration following the November 2, 2016 Foreclosure Sale Auction, without paying a Realty Transfer Fee at the time of recording, with the Sussex County Clerk later attempting to collect same in a letter dated September 12, 2017.

47.    Furthermore, the Defendants have manipulated Sheriffs' Offices into announcing "Conditions of Sale" prior to the start of the Sheriff foreclosure sale auction.  This announcement contains the procedures and guidelines for the people attending the Sheriff foreclosure sale auction.  The "Conditions of Sale" announcement contains multiple conditions that are different for members of the public, who are Third Party Purchasers, with different conditions for the representatives of the Foreclosing Lender Defendants.  For example, in the Passaic County Sheriff foreclosure sale auction, the verbal increments for bidding on a subject property is in one-hundred-dollar ($100.00) increments for the Defendants' representatives, while the bidding is in one-thousand-dollar ($1,000.00) increments for members of the public.  This is a violation of equal protection under the Constitutions of the United States and of the State of New Jersey, which ensures equal protection of the law.

48.    The Foreclosure Lender Defendants have undermined the bidding process by unfairly and inequitably manipulating the

Sheriff foreclosure sale auctions, turning the Sheriff foreclosure sale auction process under the New Jersey Fair Foreclosure Act into a mechanism for the Foreclosure Lender Defendants to avoid the payment of fees to the 21 Sheriff offices and to the State of New Jersey. Under the laws of the State of New Jersey the Sheriff foreclosure sale auction "is to secure the highest and best price in cash then obtainable for the property…". Karel v. Davis, 122 N.J. Eq. 526, 529 (1937). See also Froehlich v. Walden, 66 N.J. Super. 390, 395 (1961). Instead of obtaining the highest and best price, the Foreclosure Lender Defendants manipulate the auctions to secure the lowest price to obtain title to the property, to avoid the payment of Sheriff Commissions and the Realty Transfer Fees associated with the purchase of the property at the Sheriff foreclosure sale auction. The Foreclosure Lender Defendants also engage in the conduct of manipulating the auctions to increase their losses and false claims, to be recouped by way of claims against the FHA and VA programs, and by claims and/or deductions made to the Internal Revenue Service ("IRS") and other such entities.

49. Under N.J.S.A. 2A:32C-3(g) the Defendants are liable to the State of New Jersey for knowingly making, using and/or causing to be made and/or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of New Jersey, namely

the Realty Transfer Fee for each property purchased at the Sheriff foreclosure sale auction wherein the Defendants announced an **"upset price"** and only paid for nominal consideration of one-hundred-dollars ($100.00) for the transfer of the real property, with no Realty Transfer Fee paid, or only two-dollars ($2.00) in Realty Transfer Fees.    The Defendants should at least be obligated to pay the Realty Transfer Fee based upon the announced **"upset price"** for each property that they announce, or based upon the highest and best value that could have been obtained at a competitive Sheriff foreclosure sale auction if the **"upset price"** was not announced. Instead the Defendants pay the minimal amount of Realty Transfer Fees, or completely exempt themselves from paying the Realty Transfer Fees, as a result of the minimum one-hundred-dollars ($100.00) bid.    Due to this practice of the Foreclosure Lender Defendants, the State of New Jersey has failed to receive millions-of-dollars in Realty Transfer Fees.

### VI. DEFENDANTS' FRAUD AS TO THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) UNDER THE SINGLE FAMILY LOAN SALES (SFLS) PROGRAM / DISTRESSED ASSET STABILIZATION PROGRAM (DASP)

50.    The facts alleged in the foregoing paragraphs are to be included under all claims as though fully set forth herein.

51.    The United States Department of Housing and Urban Development (HUD) maintains a program known as the Single Family

44

Loan Sales (SFLS) Program, also known as the Distressed Asset Stabilization Program (DASP). Through this program, after HUD pays an insurance claim on a defaulted FHA loan to an initial mortgage lender who is insured by HUD, HUD obtains an assignment of the loan from the mortgage lender through the SFLS/DASP program. Through the SFLS/DASP program, HUD/FHA is required to pool and sell the assignment of the mortgage through "a competitive auction and transfers the defaulted loans to the winning qualified bidders."[8] **EXHIBIT V – HUD internet publication describing the SFLS Program.**

52.   The SFLS/DASP program serves to reduce costs to HUD/FHA in lieu of HUD/FHA directly foreclosing upon properties obtained through the program. The SFLS/DASP program also serves to provide borrowers of owner occupied properties additional time to reside in the property and attempt to negotiate with new servicing companies who obtain the defaulted loan from HUD/FHA through HUD's "competitive auction." **(See also Exhibit W – Quarterly report on FHA Single Family Loan Sales, Data as of May 30, 2014).**

53.   The Defendants, who include but are not limited to, banks, mortgage institutions, servicing companies, loan companies, lenders, trust companies, credit unions, private

---

[8] What is the Single Family Loan Sale (SFLS) Program? https://hudgov.prod.parature.com/link/portal/57345/57355/Article/4276/What-is-the-Single-Family-Loan-Sale-SFLS-Program   **EXHIBIT V – HUD internet publication describing the SFLS Program.**

companies and their representatives, have developed a way to further perpetuate a fraud upon HUD/FHA by conspiring with other banks and mortgage servicing companies to obtain properties through the SFLS/DASP program.

54.     To perpetrate the fraud, the initial mortgage lender who is insured by HUD that receives claim moneys from HUD on a defaulted loan, prepares an assignment of mortgage to HUD.

55.     The same initial mortgage lender who is insured by HUD that already received payment on the claim from HUD, then prepares an additional assignment of mortgage loan from HUD to a different mortgage servicer that it has colluded with.  The new assignee claims to be a power of attorney/attorney in fact of HUD, without filing any power of attorney paperwork along with the assignment that is filed at the County Clerk's Record Office.   Without HUD knowing, the new assignee obtains the assignment of the mortgage loan for a nominal fee (ie. ten-dollars $10.00), then proceeds to foreclose upon the property, obtain the property at Sheriff Foreclosure Sale Auction for a minimum fee of one-hundred-dollars ($100.00) if there is no competitive bidding at the Sheriff Foreclosure Sale Auction when the "upset price" is announced.  The new assignee then obtains a windfall at the expense of HUD/FHA once the property is later privately sold, having obtained the property for one-hundred-ten ($110.00) plus carrying costs.

56.     As an example of the above, Jesse Wolosky met with the foreclosed upon property owner of 22 Bennington Square, Township of Washington, New Jersey 07840 and performed research and title work with reference to the property to discover where Wells Fargo Bank, NA received an insurance payment in the amount of $295,201.42 from the FHA/HUD "CAIVRS" system on a defaulted loan pertaining to 22 Bennington Square, Township of Washington, New Jersey 07840 paid on December 19, 2015. Two days after receipt of the $295,201.42 payment from FHA/HUD, on December 21, 2015 Wells Fargo prepares the attached **Exhibit X**, which is an assignment <u>from</u> Wells Fargo to <u>HUD</u>, <u>prepared by Wells Fargo</u>, for a figure of ten-dollars ($10.00), to be recorded and returned to Richmond Monroe Group, Inc.

57.     Simultaneously, <u>Wells    Fargo    prepares</u> an assignment of Mortgage and Other Loan Documents <u>from</u> the Secretary of Housing and Urban Development <u>to</u> Bayview Loan Servicing, LLC for ten-dollars ($10.00), to be recorded and returned to Richmond Monroe Group, Inc. **Exhibit Y.** Bayview Loan Servicing, LLC claims to be Power of Attorney/Attorney in Fact for HUD, with a "Power of Attorney to Be Recorded Concurrently" as outlined in the Assignment; however, no Power of Attorney is recorded at the County Clerk's Office with the Assignment. **Exhibit Y. Under the assignment documents to Bayview Loan Servicing, LLC, the First Vice President, David**

Briggs, claims to be Attorney in Fact for the Secretary of Housing and Urban Development, _and assigns the assignment of mortgage to his own company,_ Bayview Loan Servicing, LLC.

58.    The Department of Housing and Urban Development reports that as of May 30, 2014 Bayview Asset Management, which is a related entity to Bayview Loan Servicing, LLC, was the top second purchaser by volume for national sales totaling **$2,438,027,948.00 (billion dollars)** and an amount of $908,011,533.00 **(million dollars)** for total Neighborhood Stabilization Outcome (NSO) sales. (**See also** Exhibit W – **Quarterly report on FHA Single Family Loan Sales, Data as of May 30, 2014, Page 8).** Of all transactions in the SFLS/DASP program, New Jersey had the second highest historical distributions of loan sales totaling **$2,387,728,116.00 (billion dollars).** Id.

59.    Attached hereto as **Exhibit X** through **Exhibit Y** is an example of chronical filings outlining the fraudulent scheme above concerning the defaulted property, 22 Bennington Square, Township of Washington, New Jersey 07840.

60.    Wells Fargo and Bayview Loan Servicing, LLC had a prior agreement and/or understanding among themselves, developed through collusion, to transfer the assignment of the mortgage to Bayview Loan Servicing, LLC such that Bayview Loan Servicing,

LLC obtains a windfall at the expense of HUD/FHA and the United States of America.

61.    The above two assignments were then submitted by Wells Fargo Home Mortgage, to the Morris County Clerk, together for filing and were filed consecutively in Mortgage Book 22874, Pages 491 through 496.   **Exhibit X** through **Exhibit Y**.

62.    Wells Fargo Home Mortgage colluded with Bayview Loan Servicing, LLC to assign the mortgage loan for ten-dollars ($10.00) without HUD/FHA having knowledge of the transfer, and the transfer occurring without a competitive auction occurring as required through HUD/FHA regulations.[9]

63.    The above is only one example of hundreds of thousands of assignments being made among the Foreclosing Lender Defendants, at the expense of HUD/FHA and the United States of America.

<u>COUNT I</u>

**(Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A))**

1. Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

---

[9] https://hudgov.prod.parature.com/link/portal/57345/57355/Article/4276/What-is-the-Single-Family-Loan-Sale-SFLS-Program
FHA Policy information related to the SFLS claim submission process is available in Handbook 4000.1 IV.A.2.b.iii.
at https://portal.hud.gov/hudportal/HUD?src=/program_offices/administration/hudclips/handbooks/hsgh
FHA's Office of Asset Sales webpage is
https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/comp/asset/hsgloan

2. This is a claim for treble damages, attorneys' fees and forfeitures under the False Claims Act, 31 U.S.C. §§ 3729, *et seq*.

3. Through the acts described in this Complaint, the Defendants, their agents and employees knowingly submitted or caused to be submitted to the United States government knowingly false and/or fraudulent claims for payment on FHA and VA backed mortgages.

4. Through the acts described in this Complaint, the Defendants, their agents and employees knowingly made, used or caused to be made and/or used false statements and records to have such false and fraudulent claims paid and approved by the United States government.

5. The Unites States of America, unaware of the falsity of the records, statements and claims made by these Defendants, paid the Defendants for claims that would otherwise not have been allowed.

6. By reason of the Defendants' false records, statements and claims, the United States of America has been damaged and continues to be damaged in the amount of hundreds of millions of dollars.

## COUNT II

**(Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B))**

1.      Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

2. Through the acts described in this Complaint, Defendants knowingly made, used and/or caused to be made or used, a false record or statement material to a false or fraudulent claims, and/or to have the United States of America pay or approve the false or fraudulent claims, in violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(B).

3. As a result of the Defendants' acts, the United States of America has sustained damages in an amount to be determined at trial, and therefore, is entitled to treble damages under the False Claims Act, attorneys' fees, plus civil penalties pursuant to the False Claims Act for each violation.

## COUNT III

**(Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C))**

1.      Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

2. Through the acts described in this Complaint, the Defendants knowingly conspired, and continue to conspire, with the various entities and/or persons described herein, as well as other named co-conspirators, to commit acts in violation of 31 U.S.C. § 3729(a)(1)(A), § 3729(a)(1)(B) and §3729(a)(1)(G).

Defendants and these entities and/or persons committed overt acts in furtherance of the conspiracy as described within this Complaint.

3. As a result of the Defendants' actions, as set forth above, the United States of America has been, and will continue to be, severely damaged.

## COUNT IV

**(Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G))**

1. Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

2. As alleged above, the Defendants knowingly avoided or decreased its obligation to pay or transmit money to the Government. Specifically, the Defendants manipulated Sheriffs foreclosure sale auctions within the State of New Jersey, and other states, by making announcements prior to the bidding at auctions, including announcing an **"upset price."** This practice intentionally negated the participation of third-party bidders in the Sheriff foreclosure sale auction, which increased the claim amounts that the Defendants would make to the FHA and VA programs. By negating the participation of third-party bidders at auction, the Defendants concealed, avoided and/or decreased its obligations to pay or transmit money or property to the United States of America as the United States of America would

have otherwise been entitled to a credit against the claims made under FHA and VA programs. Instead, the United States paid out claims to the Foreclosure Lender Defendants without receiving proper credit against the FHA and VA claims made by the Defendants. If potential third-party bidders would have competitively bid upon and purchased the properties, the claims made to the FHA and VA would have been decreased or not made at all.

3. As a result of the Defendants' actions as set forth within this Complaint, the United States of America has been, and will continue to be, severely damaged.

## COUNT V

### (Violation of the New Jersey False Claims Act N.J.S.A. 2A:32C-3(g))

1. Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

2. This is a claim for treble damages, attorneys' fees and penalties under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1, *et seq.*

3. As described above, the Defendants knowingly made, used, and/or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State of New Jersey, namely Realty Transfer Fees concealed and/or avoided and/or decreased

as a result of the Defendants' manipulation of the Sheriff foreclosure sale auctions.

4. The State of New Jersey was unaware of the falsity of the records, statements and claims, and as a result thereof, did not collect moneys that it was otherwise due and owed.

5. As a result of the Defendants' fraudulent scheme, the State of New Jersey has suffered tens of millions of dollars in damages and continues to be damaged.

6. The State of New Jersey is entitled to the maximum penalty, treble damages and attorneys' fees for every violation alleged herein.

### COUNT VI

**(Violation of the Sherman Act)**

1. Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

2. The Defendants' engagement in a fraudulent scheme to discourage bidding at Sheriff's foreclosure sale auctions suppressed the competition by third party purchasers and limited the consideration paid for by the Defendants at the Sheriff foreclosure sale auctions, such that the Defendants would obtain properties for their initial starting bid of only one-hundred-dollars ($100.00). The Defendants, through their Bid-Rigging,

obtained properties at the Sheriff foreclosure sale auctions without any competitive bidding occurring.

3. The actions of the Defendants, the agreements among the Defendants, and the conspiracy among the Defendants to engage in conduct to suppress and eliminate competition at Sheriff foreclosure sale auctions as described above, through their actions including Bid-Rigging, is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1 et seq. No elaborate industry analysis is required to demonstrate the anticompetitive character of this conduct and agreements.

4. The Bid-Rigging, anti-competitive techniques and agreements made between the Defendants is also an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman, 15 U.S.C. § 1. The principal tendency of the agreement between the Defendants by announcing an **"upset price"** prior to the start of bidding on a specific property at the Sheriff foreclosure sale auction was and is done by the Defendants to restrain competition at Sheriff foreclosure sale auctions and to limit their expenses regarding commissions to the Sheriff's offices and fees to the State of New Jersey in the form of Realty Transfer Fees. The nature of the restraint is obvious and the agreement has no legitimate pro-competitive justification. It is clear that the agreement and conduct would

have an anticompetitive effect on the Sheriff foreclosure sale auctions and harm the competitive process.

5. The purpose of announcing an **"upset price"** between the Defendants and their co-conspirators at the Sheriff foreclosure sale auctions is "gaming the system", including but not limited to, Bid-Rigging, discouraging, repressing, stifling, restraining and suppressing competitive bidding from members of the public who are there as potential third-party purchasers of properties at the Sheriff foreclosure sale auction. As a result of the Defendants' anti-competitive techniques, the Defendants obtain title to the properties at the lowest figure and initial bid of one-hundred-dollars ($100.00). Through purchasing the properties at the initial bid of one-hundred-dollars ($100.00), the Defendants then use the Foreclosure-Report of Sale to write-off the expenses of the larger figure from the Grand Total of Decree deducting from that figure only one-hundred-dollars ($100.00) for the purchase of the property rather than for the **"upset price"** announced, what the property is assessed for, or for what the fair market value of the subject property truly is. The Foreclosure-Report of Sale is a document that summarizes the Grand Total of Decree, with Sheriff's Fees, the figure that the subject property sold for, and the deficiency. The Foreclosure-Report of Sale does not contain the **"upset price"**. When the subject property is purchased for only one-hundred-dollars

($100.00) after the **"upset price"** is announced, the Foreclosure-Report of Sale only deducts one-hundred-dollars ($100.00) from the total statement of deficiency amount when the representative purchases the subject property for one-hundred-dollars ($100.00), even though the **"upset price"** and the value of the subject property is in the hundreds-of-thousands-of-dollars. Under information and belief, the Foreclosure-Report of Sale document is used by the Defendants to report their inflated "losses" to the Federal Government and on their year-end tax returns. The Defendants then make claims against governmental programs including the FHA and VA programs for fraudulent and inflated amounts, while skirting their statutory requirements and obligations to pay Sheriff commissions to the Sheriff office and Realty Transfer Fees to the State of New Jersey. The Defendants' illegal actions include the fraud perpetrated through the SFLS/DASP program as fully detailed and outlined above.

6. **The Defendants' actions have caused the suppression of competition at Sheriff foreclosure sale auctions throughout the State of New Jersey and other states; has increased costs to the Federal Government in terms of FHA and VA claims; has decreased revenue to the Internal Revenue Service by the Defendants' claiming higher losses associated with the mortgage notes that are being held against each subject property, thorough failing**

to obtain the highest and best price on the subject property; depriving the State of New Jersey of the collection of appropriate Realty Transfer Fees on the subject properties; depriving local County Sheriff offices of commissions on the sales of the subject properties; depriving property homeowners of appropriate moneys/credits against their mortgaged debt from the highest and best purchase price that would have otherwise been obtained at a competitive auction; depriving second mortgage lien holders of appropriate moneys/credits against their second liens from the highest and best purchase price that would have otherwise been obtained at a competitive auction; and depriving prospective unknowing third-party innocent bidders at the Sheriff foreclosure sale auctions from a competitive bidding process that would otherwise allow innocent third-party members of the public to purchase the properties at Sheriff foreclosure sale auctions. If the Defendants did not engage in the collusion and conspiracies as outlined herein, the damages as outlined herein would not have resulted to the governmental entities, innocent third-parties, un-suspecting taxpayers and to the unknowing general public.

7. Relator and Plaintiff, Jesse Wolosky, personally attended weekly Sheriff foreclosure sale auctions throughout the State of New Jersey, over a five month period, and has been personally damaged as a result of the actions of the Defendants

described herein.   Furthermore, Jesse Wolosky served as a property manager to a certain property described above, wherein his position was extinguished as a result of the Defendants' conduct.

## COUNT VII

### (Violation of the Clayton Act and Robinson Pitman Act)

1. Plaintiffs re-allege and incorporate by reference the allegations made in the preceding paragraphs of this Complaint as though fully set forth herein.

2. The Defendants' engagement in a fraudulent scheme to discourage bidding at Sheriff's foreclosure sale auctions suppressed competition by third party purchasers and limited the consideration paid for by the Defendants at the Sheriff foreclosure sale auctions, such that the Defendants would obtain properties for their initial starting bid of only one-hundred-dollars ($100.00). The Defendants, through their Bid-Rigging, obtained properties at the Sheriff foreclosure sale auctions without any competitive bidding occurring.

3. The actions of the Defendants, the agreements among the Defendants, and the conspiracy among the Defendants to engage in conduct to suppress and eliminate competition at Sheriff foreclosure sale auctions as described above, through their actions including Bid-Rigging, is unlawful under the

Clayton Act 15 U.S.C.A. §12 et seq. and the Robinson Pitman Act 15 U.S.C.A. §13 et seq.

4. The Bid-Rigging, anti-competitive techniques and agreements made between the Defendants is also an unreasonable restraint of trade that is unlawful under the Clayton Act 15 U.S.C.A. §12 et seq. and the Robinson Pitman Act 15 U.S.C.A. §13 et seq.

5. The principal tendency of the agreement between the Defendants by announcing an **"upset price"** prior to the start of bidding on a specific property at the Sheriff foreclosure sale auction was and is done by the Defendants to restrain competition at Sheriff foreclosure sale auctions and to limit their expenses regarding commissions to the Sheriff's office and fees to the State of New Jersey in the form of Realty Transfer Fees. The nature of the restraint is obvious and the agreement has no legitimate pro-competitive justification. It is clear that the agreement and conduct would have an anticompetitive effect on the Sheriff foreclosure sale auctions and harm the competitive process.

6. The purpose of announcing an **"upset price"** between the Defendants and their co-conspirators at the Sheriff foreclosure sale auctions is, including but not limited to, Bid-Rigging, discouraging, repressing, stifling, restraining and suppressing competitive bidding from members of the public who are there as

60

potential third-party purchasers of properties at the Sheriff foreclosure sale auction. As a result of the Defendants' anti-competitive techniques, the Defendants obtain title to the properties at the lowest figure and initial bid of one-hundred-dollars ($100.00). Through purchasing the properties at the initial bid of one-hundred-dollars ($100.00), the Defendants then use the Foreclosure-Report of Sale to write-off the expenses of the larger figure from the Grand Total of Decree deducting from that figure only one-hundred-dollars ($100.00) for the purchase of the property rather than for the **"upset price"** announced, what the property is assessed for, or for what the fair and true market value of the subject property is. The Defendants then make claims against governmental programs including the FHA and VA programs for fraudulent and inflated amounts, while skirting their statutory requirements and obligations to pay Sheriff commissions to the Sheriff Office and Realty Transfer Fees to the State of New Jersey.

7. The Defendants' actions have caused the suppression of competition at Sheriff foreclosure sale auctions throughout the State of New Jersey and other states; has increased costs to the Federal Government in terms of FHA and VA claims; has decreased revenue to the Internal Revenue Service by the Defendants' claiming higher losses associated with the mortgage notes that are being held against each subject property, thorough failing

to obtain the highest and best price on the subject property; depriving the State of New Jersey of the collection of appropriate Realty Transfer Fees on the subject properties; depriving local County Sheriff offices of commissions on the sales of the subject properties; depriving property homeowners of appropriate moneys/credits against their mortgaged debt from the highest and best purchase price that would have otherwise been obtained at a competitive auction; depriving second mortgage lien holders of appropriate moneys/credits against their second liens from the highest and best purchase price that would have otherwise been obtained at a competitive auction; and depriving prospective unknowing third-party innocent bidders at the Sheriff foreclosure sale auctions from a competitive bidding process that would otherwise allow innocent third-party members of the public to purchase the properties at Sheriff foreclosure sale auctions. If the Defendants did not engage in the collusion and conspiracies as outlined herein, the damages as outlined herein would not have resulted to the governmental entities, innocent third-parties, un-suspecting taxpayers and to the unknowing general public. The Defendants' illegal actions include the fraud perpetrated through the SFLS/DASP program as fully detailed and outlined above.

8. Relator and Plaintiff, Jesse Wolosky, personally attended weekly Sheriff foreclosure sale auctions throughout the

State of New Jersey, over a five month period, and has been personally damaged as a result of the actions of the Defendants described herein.    Furthermore, Jesse Wolosky served as a property manager to a certain property described above, wherein his position was extinguished as a result of the Defendants' conduct.

### PRAYER FOR RELIEF

**WHEREFORE**, Relator, Jesse Wolosky, and Plaintiffs pray for judgment against Defendants as follows:

A. That Defendants be ordered to cease and desist from submitting any additional false claims, or further violating 31 U.S.C.§ 3729 *et seq*. and N.J.S.A. 2A:32C-1, *et seq*.

B. That Defendants be ordered to cease and desist from illegally restraining trade and commerce in violation of Section 1 of the Sherman Act, the Clayton Act 15 U.S.C.A. §12 et seq., and the Robinson Pitman Act 15 U.S.C.A. §13 et seq.

C. That judgment be entered in Relator's favor against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. §3729(a), plus a civil penalty as provided by 31 U.S.C. §3729(a), to the extent such multiplied penalties shall fairly compensate the United States of

America for losses resulting from the various schemes
undertaken by Defendants, together with penalties for
specific claims to be identified at trial after full
discovery.

D. That Relator Jesse Wolosky be awarded the maximum
   amount allowed pursuant to 31 U.S.C. §3730(d).

E. That Relator Jesse Wolosky be awarded the maximum
   amount allowed pursuant to N.J.S.A. 2A:32C-7,
   including reasonable attorneys' fees and litigation
   costs.

F. That judgment be entered in Relator Jesse Wolosky's
   favor and against Defendants in the amount of the
   damages sustained by the State of New Jersey or its
   political subdivisions multiplied as provided for in
   N.J.S.A. 2A:32C-3, plus a civil penalty allowed by
   statute, to the extent such multiplied penalties shall
   fairly compensate the State of New Jersey or its
   political subdivisions for losses resulting from the
   various schemes undertaken by Defendants, together
   with penalties for specific claims to be identified at
   trial after full discovery.

G. The Defendants be ordered to disgorge all sums by
   which they have been enriched unjustly by their
   wrongful conduct.

H. That judgment be granted for Relator Jesse Wolosky against Defendants for all costs, including but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator Jesse Wolosky in the prosecution of this suit.

I. Damages and treble damages to the Relator Jesse Wolosky incurred as a result of the Defendants' violation of the Sherman Act, Clayton Act and Robinson-Patman Act, in addition to any and all costs, attorneys' fees and civil penalties allowable under the Sherman Act, Clayton Act and Robinson-Patman Act.

J. That Relator Jesse Wolosky be Granted such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Relator Jesse Wolosky demands a trial by jury of all issues herein so triable.

KING AND PETRACCA, LLP
Attorneys for Plaintiffs

Matthew R. Petracca, Esq.

Dated: